# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | CASE NO. 5:23-cr-47-LCB-HNJ |
| vs. ) | |
| ) | |
| ) | |
| KENNETH TITTLE, ) | |

### DEFENDANT'S SENTENCING MEMORANDUM
### AND MOTION FOR DOWNWARD DEPARTURE OR VARIANCE

COMES NOW the Defendant, Kenneth (Ken) David Tittle, by and through undersigned counsel, and files his Sentencing Memorandum to assist this Honorable Court. In this sentencing memorandum there will be several distinct arguments made for reductions, each independent of the other, as well as an aggregate sentencing request.

## I.   INTRODUCTION

In *United States v. Booker*,[1] the Supreme Court established that a district court judge is to impose a sentence upon a defendant that is "reasonable." The sentence imposed must be *informed* by the advisory guideline range, but ultimately driven by the sentencing factors set forth by Congress in 18 U.S.C. §3553(a).[2] The Supreme Court clarified in *Booker,* that the sentencing guidelines are advisory in nature and as such must be adapted to fit the unique circumstances presented to the Court and be in keeping with the sentencing directives set forth in 18 U.S.C.

---

[1] 543 U.S. 220 (2005).

[2] *Id*. (emphasis added)

§3553(a).³   Additionally, in *Kimbrough v. United States,*⁴ the Supreme Court notes that sentencing courts may treat the guidelines as "one factor among several" to be considered in imposing an appropriate sentence and that courts may vary from the advisory guideline range based solely on policy.⁵   The Court's "overarching" duty is to "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing."⁶

To that end, the following arguments are made based on the multiple, and very unique circumstances applicable to Mr. Tittle's life.  A departure and/or variance from the advisory guideline range is warranted in this case in that, "independent of the Guidelines, application of the sentencing factors in 18 U.S.C. §3553(a) warrants a lower sentence."₇  Mr. Tittle submits that a departure/variance allowing for a probationary sentence is within the court's discretion and in the alternative a reduction to 24 months is warranted.  Said sentence to include or be followed by supervised release with special conditions of drug monitoring and asks that the Honorable Court sentence him accordingly.

## II.   CASE HISTORY

The essential elements of this case are presented to this Honorable Court in The Offense Conduct, within the PSR, as well as the Factual Basis for Plea in the plea agreement.   In Paragraph 19 of the PSR, it discusses that Mr. Tittle had met an individual who claimed to have been a U.S.

---

³*Id*.

⁴ 552 U.S. 85 (2007).

⁵ *Id.* at 90.

⁶*Id*. at 101, *see also United States v. Pepper*, 131 S. Ct. At 1212-43.

₇*Id. citing Booker*, 543 U.S. 259-60.

agent or deputy marshal. This person, Mr. Robert Newman Hall, became a friend to Mr. Tittle and had shared with him information about his own life and was a self-proclaimed doomsday prepper. Prior to his death, Mr. Hall told Mr. Tittle that in the event of his death he wished Mr. Tittle to go on to his property and to take the weapons but never gave him permission or title to the property prior to his death. Mr. Tittle did not obtain permission prior to going on to the property and retrieving the weapons. Most of the property was "extremely overgrown" as described in the factual basis of the plea agreement and had been abandoned for years. Because of this, most of the items retrieved were simply rusted pieces of metal that had been weapons at one point in time but no longer served as anything more than a rusted piece of metal, as it is stated in paragraph 20 of the PSR in that most of "the weapons had some wear and disrepair due to the fact that they had obviously been in the trailer for a long time." Mr. Tittle's primary reason for going on to the property and taking the items was not for nefarious purposes but more out of a sense of honoring his deceased friends wishes while trying to hold onto something that had been so important to Mr. Hall.

After Mr. Tittle went to the property in February of 2020, he did not return to the property again. Ever. Mr. Tittle became ill with Covid-19 and had severe health issues, some of which are listed in paragraph 68 of the PSR. Specifically, Mr. Tittle lost all vision in his right eye due to a car battery exploding in his face but did in fact lose sight in both eyes for a period of time before the left eye regained most of its sight. All of these factors caused Mr. Tittle to fall into deep despair and depression. Because of this, Mr. Tittle became extremely addicted to controlled substances, especially alcohol and methamphetamines. But Mr. Tittle, on his own accord and prior to any arrests, enrolled in the HisWay rehabilitation in patient treatment program, spending almost a year in residence. Mr. Tittle continues to be extremely active in the rehabilitation

program for himself as well as working tirelessly to help others who are currently in the program.

Submitted concurrently with this sentencing memorandum are letters, pictures, and certificates that show the real Mr. Tittle and what he is capable of. It is that Mr. Tittle that the defense requests that you keep in consideration as contemplating a departure as well as the ultimate sentence.

### III.   A VARIANCE IS APPROPRIATE UNDER ALL § 3553(a) FACTORS

In addition to the arguments expected to be made before this Honorable Court at the time of sentencing, the sentencing factors articulated by Congress in 18 U.S.C. §3553(a),[8] weigh strongly in favor of a sentence of variance in this case.

In *Rita v. United States*, the Supreme Court held that while an appellate court may apply a presumption of reasonableness to a District Court sentence imposed within a properly calculated guideline range, such a presumption does not apply in the District Court.[9] Because the court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing" the courts are allowed to disagree with the guidelines because the "Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines

---

[8] Section 3553(a) requires the Court to consider the following factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the Sentencing Guidelines; (5) any pertinent Guidelines policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.
[9] *See Rita*, 127 S.Ct. at 2465.

ranges] based solely on policy considerations, including disagreements with the Guidelines."[10]

### A. The Advisory Guideline Range is Greater than Necessary

Congress directed that the District Court in each individual case "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing.[11] The sentencing court is to filter the guidelines general advice through the sentencing factors established by congress, thereby allowing the court to give deference to all factors in a case an produce a sentence that is not unreasonable. A District Court Judge in the Eastern District of Virginia stated that "fashioning a just sentence cannot be reduced to a mere arithmetical exercise [and] reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produces an illusory precision that obscures the fact that sentencing, in the end, must involve the exercise of judgment."[12] The recommended guideline sentence is excessively greater than what is necessary in light of the fact that Mr. Tittle has disassociated his life from drugs and is on the path towards becoming a productive member of society again. Additionally, no objections to the calculations of the guidelines were filed and Mr. Tittle understands the enhancements that were stated but believes that enhancement under 2K2.1(b)(1)(C) misrepresents the amount of weapons taken. The factual basis states that between 25 and 30 weapons were taken and that they were split between Mr. Tittle and Mr. Joe Perkins, resulting in 12 to 15 weapons each. This would reduce the enhancement to a +4 points to the offense level rather than the indicated +6.

### B. Mitigating Factors Weigh in Favor of a Lesser Sentence

---

[10] *Kimbrough v. United States*, 552 U.S. 85, 101-02 (2007).

[11] 18 U.S.C. §3553(a)

[12] *United States v. Biheiri*, 356 F.Supp.2d 589 (E.D. Va. 2005).

Congress established the seven factors in 18 U.S.C. §3553(a) to be considered in sentencing. When a mitigating factor does not otherwise qualify for a traditional downward departure under the guidelines, the sentencing court may still consider and apply such a factor to fashion a sentence below the advisory sentencing guideline range through a variance to reflect the weight of these factors. These factors include the previously addressed nature and circumstances of the offense along with the history and characteristics of the defendant. Mr. Tittle recognizes the seriousness of the offense and understands the need to promote respect for the law as well as provide just punishment. Mr. Tittle's participation in the offense was minimal in that he went to his deceased friend's property in an attempt to honor his friend's wishes but recognizes that his actions were criminal. He did not return to the property for more nor did he sell, or otherwise dispose of any of the weapons he took. Mr. Tittle has tremendous respect for the law and asks that the punishment imposed be just. Mr. Tittle has already abandoned all connections with any prior associates through his subsequent conduct, showing that he has been forever deterred from continuing in this conduct. Mr. Tittle's only wish is to return home to his family and live a quiet life, thereby requiring no need for protection to the public from further crimes by the defendant.

Congress has directed that the district court "shall impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing.[13] In fact, this is the "primary directive" of the sentencing statute.[14] As stated by one district judge, "fashioning a just sentence cannot be reduced to a mere arithmetical exercise [and] reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produces an illusory precision that

---

[13] 18 U.S.C. §3553(a)(emphasis added).

[14] See *United States v. Ranum*, 353 F.Supp.2d 984, 986 (E.D. Wisc. 2005); see also *United States v. Pirani*, 406 F.3d 543, 564 (8th Cir. 2005).

obscures the fact that sentencing, in the end, must involve the exercise of judgment."[15] The sentencing guidelines have often been viewed as too harsh or too severe.[16] A sentence that is too long for the offense does not promote respect for the law but, rather, the opposite is true.[17] The sentence imposed upon the defendant in this case must not pass the "point of diminishing returns," but must be reasonable and fair in light of all relevant circumstances and factors.

Under *Booker*, every sentence meted out by a federal court must conform to the seven factors discussed in 18 U.S.C. §3553(a), which gives a detailed enumeration of the appropriate sentencing factors to be considered in this case. Even when a mitigating factor does not qualify for (or is prohibited from) a traditional downward departure under the guidelines, the sentencing court may still consider and apply such a factor in fashioning a sentence. It is all too easy for a court to provide a mechanical recitation of these factors and announce that they have been considered.

## V. CONCLUSION

For the reasons stated, Mr. Tittle respectfully requests that this Court grant his request for a downward departure and/or variance allowing for a probationary sentence is within the court's discretion and in the alternative a reduction to 24 months is warranted. The requested sentence is sufficient but not greater than necessary to serve the sentencing purposes under 18 U.S.C. §3553(a).

---

[15] *United States v. Biheiri*, 356 F.Supp.2d 589 (E.D. Va. 2005).

[16] See August 9, 2003 speech of Justice Anthony Kennedy at the ABA Annual Meeting ("our resources are misspent, our punishments too severe; our sentences too long… the sentencing guidelines are responsible in part for the increased terms… [and they] should be revised downward.") Ranum, 353 F.Supp.2d at 986 n.1 (Many judges have criticized the guidelines not only for their inflexibility, [but also for] their unnecessary harshness in many cases""; United States v. Khan, 325 F.Supp. 218, 277 (EDNY 2004) (partial quote of Kennedy speech)

[17] *See United States v. Williams*, 2006 WL 68559 (11th Circuit Jan. 13, 2006) (noting that too lengthy a sentence promotes disrespect for the law)

Dated this the 19th of September, 2023.

        Respectfully submitted,

        ***/s/ Michael T. Tewalt***
        Michael T. Tewalt
        100 Washington Street, Suite B3
        Huntsville, Alabama 35801
        (256) 288-3044
        attorney.michael.tewalt.@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

        ***/s/Michael T. Tewalt***
        Michael T. Tewalt